```
 1                    IN THE UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF VIRGINIA
 2                           ABINGDON DIVISION

 3      ************************************************************
        UNITED STATES OF AMERICA,
 4
                      Plaintiff,            CASE NO.: 1:20-MJ-00080
 5                                          August 3, 2020
                                            Abingdon, Virginia
 6                                          Motion Hearing
        -v-
 7
        DYLAN STEPHEN JAYNE,                Before:
 8                                          PAMELA MEADE SARGENT
                                            UNITED STATES MAGISTRATE JUDGE
 9              Defendant.                  WESTERN DISTRICT OF VIRGINIA

10      ************************************************************
        APPEARANCES:
11
        For the Plaintiff:
12
             JENNIFER R. BOCKHORST
13           UNITED STATES ATTORNEYS OFFICE
             180 West Main Street, Suite B19
14           Abingdon, VA 24210
             276-628-4161
15           USAVAW.ECFAbingdon@usdoj.gov

16      For the Defendant:

17           NANCY C. DICKENSON
             FEDERAL PUBLIC DEFENDERS OFFICE
18           201 Abingdon Place
             Abingdon, VA 24211
19           276-619-6080
             nancy_dickenson@fd.org
20

21

22      _____
                      Recorded by:  Ella Surber
23              Transcribed by:  Mary J. Butenschoen

24
        PROCEEDINGS TAKEN BY FTR, TRANSCRIBED USING COMPUTER-AIDED
25      TRANSCRIPTION
```

1    (Proceedings commenced 11:38 a.m.)

2          THE COURT:  Good morning.  The Court has before it

3    this morning the case of *United States of America v. Dylan*

4    *Stephen Jayne*.  It's Case Number 1:20-MJ-80.

5          Mr. Jayne is before this Court for his initial

6    appearance in this Court.  He would be due today for an

7    initial appearance and also has the right to a probable cause

8    hearing because he's charged right now on criminal complaint.

9    However, I do note that the Court has pending before it today

10   a motion for a psychiatric examination the government filed.

11   It's Docket Item Number 8.  And the government filed a motion

12   for a psychiatric examination that the Court intends to take

13   up first.  Depending on my determination on that, we may or

14   may not go forward with the initial appearance today and/or

15   set his probable cause hearing or hold his probable cause

16   hearing and/or a detention hearing.

17         Let me just ask Ms. Dickenson, the government's

18   motion was filed some time ago.  Mr. Jayne, of course, was

19   arrested in another district and was transported to this

20   district.  Is the defense contesting the motion for a

21   psychiatric examination?

22         MS. DICKENSON:  No, we do not take any position

23   regarding that motion.

24         THE COURT:  All right.  Does the government have

25   evidence to present today other than that contained in the

1     motion?

2              MS. BOCKHORST:  Your Honor, may I proffer on what

3     has occurred in the courtroom before your appearance?

4              THE COURT:  You may, and we'll see what the defense

5     response to that is.

6              MS. BOCKHORST:  Your Honor, Mr. Jayne is presenting

7     today much as he did in the EDVA, and I watched part of that

8     EDVA, the last hearing.  He has been yelling at his counsel

9     regarding them bringing him a food stamp card.

10             THE COURT:  I'm going to have to ask you to speak up

11    just a little bit.

12             MS. BOCKHORST:  Yelling that they did not bring him

13    a food stamp card, that he has an appointment to go shopping.

14    He clearly doesn't seem to understand what he's here for.  He

15    was yelling that he did not want any part of their mental

16    health court, which maybe suggests he has some idea of why

17    he's here, but he certainly -- just as what I witnessed in the

18    EDVA and what was reported back to me, he does not seem to

19    understand what is actually transpiring in the courtroom.  And

20    he certainly does not seem to be capable of having a

21    conversation that is on point to what is actually happening.

22             The SAUSA at EDVA had called back after the first

23    hearing with grave concerns about his competency.  And from

24    what I witnessed both at the EDVA hearing and here today

25    before the hearing, I have to say I share those concerns.

1              Agent --

2              THE COURT:  Excuse me just one moment.  Can you

3    print -- I didn't bring that motion with me because I thought

4    you would print it.  It's Number 8.

5              There was an allegation in the motion that Mr. Jayne

6    had previously been diagnosed with schizophrenia.

7              MS. BOCKHORST:  Yes, ma'am, and Agent Stith is here

8    if you need to hear evidence as to that, but my understanding

9    is there have been a series of contacts going back since 2008

10   between the U.S. Capitol Police and Mr. Jayne.  The first time

11   they note based upon their conversation with him, they

12   notified D.C. police, and it was their understanding he was

13   involuntarily committed after that.

14             They have had conversations with his mother and his

15   sister, including since his arrest, in which they -- they said

16   he had been diagnosed with schizophrenia, that he is fine when

17   he's medicated, but he is not taking his medication.  As a

18   result they have had very little contact with him, my

19   understanding is, the last ten years.  But his mother had

20   relayed I believe to Agent Stith that if he would be medicated

21   he would not be a danger to anyone.  That she believed that

22   this is -- she believed that this is all -- his behavior or

23   the alleged threats are all due to his illness.

24             THE COURT:  Okay.  Ms. Dickenson, let me ask, have

25   you had a chance to consult with Mr. Jayne?

1           MS. BOCKHORST:  I have, Your Honor.

2           THE COURT:  I want to be clear about this:  As an

3    Officer of the Court, if you have concerns about your client's

4    competency, the Court expects you to raise that with the

5    Court.  I'm not a mental health expert, and I don't -- you

6    know, I don't have the ability just to look at folks to tell

7    if they are competent or not competent, and I have to rely on

8    experts to tell me that.  But in cases where it's an issue,

9    sometimes I have little resort, other than to ask the experts

10   to give me an opinion on that.  I mean, it certainly would

11   seem that the facts that are alleged at least in the motion

12   raise some serious concerns.

13          THE DEFENDANT:  Is there a general scheduled

14   paycheck available for you, and --

15          THE COURT:  Mr. Jayne?

16          THE DEFENDANT:  -- and and ID for Mr. Jayne?

17          THE COURT:  Mr. Jayne?

18          THE DEFENDANT:  Is there?

19          THE COURT:  Mr. Jayne?

20          THE DEFENDANT:  I can't be anybody, Miss, I can't,

21   but --

22          THE COURT:  You can't be Mr. Jayne?

23          THE DEFENDANT:  I can have individual check fraud,

24   but I can't be myself.

25          THE COURT:  Okay.

1          THE DEFENDANT:  Like consumers card and advancements

2   for employment, their response?  It's really embattled with

3   themselves as a party to involve the news, but why cyber

4   attack me like it's -- you know, it's a convenience?  It's not

5   a convenience to cyber attack anyone that you won't let them

6   out --

7          THE COURT:  Mr. Jayne?

8          THE DEFENDANT:  -- as a mental health.  That's an

9   excuse for everybody else (indiscernible) paycheck.

10          THE DEFENDANT:  Mr. Jayne, I'm going to ask that you

11   not voluntarily speak unless I ask you something.

12          THE DEFENDANT:  It's really not a wedding.  I wasn't

13   invited to get one.

14          THE COURT:  And I want to fully understand that,

15   okay?  But the reason I'm really concerned about you speaking,

16   sir, is that you might say something that could be used

17   against you.

18          THE DEFENDANT:  Well, I have, you know, more awarded

19   money I don't receive, and their process never rewards me in

20   the past six years that it was belonging to them at the bank,

21   that I should stay in the mental health award.  It was

22   actually given to me as a generally scheduled paycheck and

23   that they weren't rewarding it to me in their process.  As a

24   single appointment there was a lot more involved there than I

25   could, you know, comprehend individual status.

1          THE COURT:  I hear your concerns.  That's really not

2     the issue right at this moment, Mr. Jayne, if you will give me

3     a moment, okay?

4          Ms. Dickenson?

5          MS. DICKENSON:  Your Honor, given Mr. Jayne's

6     apparent confusion today, there are times when he does seem to

7     understand why he's here.  He recalls the Court's name.  He's

8     requested a bond today.  So there is some general

9     understanding of the fact that he is in custody and he would

10    prefer not to be in custody.  But there are some obvious

11    difficulties in communicating with Mr. Jayne.

12          We have discussed with the government the motion

13    that they have filed.  Our concern, Your Honor, is a transfer

14    of Mr. Jayne to a federal medical facility given the COVID-19

15    pandemic and the large number of positive cases at both Butner

16    and Lexington.  I'm not sure Lexington is performing

17    evaluations now or not, but those facilities have large case

18    numbers.

19          THE COURT:  Let me ask you this:  I know in the past

20    the public defender has hired a mental health expert to do an

21    initial evaluation of someone and to determine whether or

22    not -- an inside evaluation to determine whether or not they

23    are competent.  And that would give us at least something to

24    go on.

25          Does the Public Defender's Office have the ability

1    to do that in this case.

2            MS. DICKENSON:  Your Honor, I've made some

3    preliminary investigations about availability of an expert

4    to -- who would come to the Abingdon jail given the pandemic,

5    Dr. Shah from ETSU.  He is now retired but continuing to do

6    private work.

7            THE DEFENDANT:  Is that a problem with James Purcell

8    from the UK or the British Royal Family that it's involved

9    with their media --

10           THE COURT:  Mr. Jayne?

11           THE DEFENDANT:  -- located at the NSA address?  It

12   wasn't a problem with Carbon County and me living there.  It

13   was an issue if I moved to Vermont and trespassing on

14   property, he threw my application in the garbage.  And I had

15   that mailed to you in your complaint on September 19, 2019.  I

16   mailed it to you from Vermont.

17           THE COURT:  Mr. Jayne, please, sir, when you speak

18   to the Court, leave your mask in place, okay?  Thank you.  I

19   appreciate that.  Thank you.

20           You were saying, Ms. Dickenson?

21           MS. DICKENSON:  I apologize.  Dr. Shah is available

22   to perform the evaluation.  He will not come to the jail in

23   person, but if telemedicine can be arranged he's willing to do

24   that.

25           We've also contacted an expert that's been utilized

1    by the Eastern District of Tennessee.  Katie Smith is located

2    in Tennessee, in Knoxville.

3              Third possibility is Dr. Rebecca Loehrer in Radford.

4    We have not been able to confirm her availability.

5              There are some possibilities, Your Honor.  We

6    understand that the government would have the obligation to

7    pay for the evaluation and is able to do that in the case

8    of -- in recent cases the government has handled the financial

9    responsibility.

10             THE COURT:  What would be the government's response

11   to doing some kind of local evaluation to at least give us an

12   idea of exactly what condition Mr. Jayne is in?

13             MS. BOCKHORST:  Given the circumstances of the

14   pandemic, we think that that is reasonable.

15             THE COURT:  Okay.

16             MS. BOCKHORST:  And I'll add that Ms. Dickenson is

17   correct that the financial burden would fall on the

18   government, and I was asked to ask you to include that in the

19   order just so that the paperwork is clear, that it's the

20   government's responsibility to pay for that.

21             THE COURT:  Well, what I would like to do is this:

22   Is I would like to set a deadline for a few days to see if we

23   can agree on an evaluator.  And if we can make the

24   arrangements for a local evaluator, then I would do an order,

25   ordering, basically, the marshal service to make the

1   arrangements necessary, especially if it needs to be by

2   videoconferencing, to make the arrangements necessary to allow

3   it to happen, to allow the evaluator -- if the evaluator

4   wanted to go in, to allow the evaluator to go in and to state

5   that the government would pay for it.

6           Do you-all think that you-all might have a good

7   chance of doing that within the week?

8           MS. DICKENSON:  Yes, Your Honor, I would think.

9           THE COURT:  Okay.  What I'm going to do at this

10  point is I'm only going to enter an oral order.

11          THE DEFENDANT:  I'm not interested in your mental

12  health exam and your, you know, parody of rules.  I'm not

13  going to --

14          THE COURT:  Right, I hear you, Mr. --

15          THE DEFENDANT:   -- attack my identity.

16          THE COURT:  I understand you.

17          THE DEFENDANT:  You know my identity is my name and

18  my Social Security number.  It isn't more like information and

19  their guidelines that they're asking for.  I'm not going to

20  agree to it.

21          THE COURT:  I hear you, Mr. Jayne, and I hear your

22  position.

23          THE DEFENDANT:  The White House Corporation offers

24  addresses and offers shopping money to the right individuals

25  without this procedure of their -- of their media and their

1    introduction of their own concepts.  And, you know, reality

2    doesn't exist with them.  It exists with me.

3              THE COURT:  May I --

4              THE DEFENDANT:  In the courtroom I went to the

5    police officer first.  I go to the police officer for help

6    when the U.S. Attorney attacks me with a fax machine or it's

7    presented media control with their abilities to use the

8    courtroom.

9              THE COURT:  Mr. Jayne?

10             THE DEFENDANT:  It's not appropriate since the past

11   money was stolen and, you know, it's my own ability to make

12   choices for myself.  It's not theirs.  It doesn't ever exist

13   to them with my ID.  Those are my taxes to be paid by me.

14   Where the corporation that chose me to have this in my own

15   place that was made in a court order.  Not for them to party

16   with at their own place and positions to associate me.  I

17   can't do that on my own locked in a jail cell.  I can't do

18   that.

19             THE COURT:  Mr. Jayne, I hear --

20             THE DEFENDANT:  That's a terroristic threat to me.

21             THE COURT:  Mr. Jayne, I hear your concerns.

22             THE DEFENDANT:  It was really only made for an

23   appointment from the service that was offering me the general

24   scheduled paycheck from the same individuals that say they

25   offer work and employment opportunities at Social Security in

1    their mental health evaluations.  It doesn't make a lot of

2    sense since --

3              THE COURT:  May I --

4              THE DEFENDANT:   -- two weeks ago.

5              THE COURT:  Mr. Jayne, may I speak for a moment?

6              Thank you.  Thank you, sir.

7              What I'm going to do is I'm going to take the motion

8    under advisement.  I'm going to enter an oral order asking

9    counsel to consult and let me know within the week, within

10   seven days, if you can agree on an evaluator and what the

11   terms of that evaluation would have to be, whether it would

12   have to be by telemedicine or going into the jail.

13             And then when I get that information, I will do my

14   order to see if we can arrange, first, to get an evaluation

15   locally, and then, of course, if Mr. Jayne is going to have

16   to -- if he's not competent and he's going to have to be

17   restored to competency, then that's probably going to have to

18   occur at a federal medical facility.

19             THE DEFENDANT:  Do I know this is my bail hearing

20   today?

21             THE COURT:  Mr. Jayne, I can't --

22             THE DEFENDANT:  Do I know this is my bail hearing?

23             THE COURT:  I don't know that you know this is your

24   bail hearing, okay?

25             THE DEFENDANT:  What was my arrest date?  It was

1   like June 25 that was provided a charge that you worked on for

2   the past two years and didn't represent me in the past six

3   years that was my money that's going somewhere else.  Awarded

4   to the court from me?  I'm not going to like be in a position

5   to accept this is my bail, that you're not posting me any bail

6   or making a result, other than no bail hearing.

7            THE COURT:  Mr. Jayne?

8            THE DEFENDANT:  Like I don't have an existing

9   service that -- that's invisible to me that I carry.  Like

10  this is the only service I have to trust in your courtroom

11  with these individuals trying to take priority on my identity.

12  There hasn't been anything trusted to me they are capable of,

13  other than stealing, theft, wasteful fraud, and, you know,

14  solicitation of my own device.

15           So I really don't appreciate anything that has been

16  in communication with my family or their own identity theft.

17           THE COURT:  Ladies, is there anything further in

18  Mr. Jayne's case?

19           THE DEFENDANT:  As far as the where the money is,

20  that's everybody that doesn't go through those.

21           THE COURT:  All right.  What I'm going to do --

22           THE DEFENDANT:  This is my bail hearing.

23           THE COURT:  -- is I'm going to adjourn the

24  proceedings.  I'm going to remand -- remand him to the custody

25  of the marshal service, okay?

1          Court will stand in adjournment.

2          THE MARSHAL:  All rise.

3     (The proceedings concluded at 11:54 a.m.)

4                      **CERTIFICATE**

5          I, Mary J. Butenschoen, do hereby certify that the
      foregoing is a correct transcription of the FTR recording in
6     the above-entitled matter.

7                _____/s/_____9/30/2020
                Mary J. Butenschoen, Transcriber

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25