UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:20MJ00080 |
| | : | |
| DYLAN JAYNE | : | |

United States' Response to the Motion for Release from Custody

On January 27, 2021, defendant Dylan Jayne, through counsel, moved for his release from custody, arguing the time permitted to evaluate Jayne to determine if competency can be restored under 18 U.S.C. § 4241(d)(1) has expired. Because the four-month period allowed by § 4241(d)(1) did not begin until Jayne arrived at the Federal Medical Center, he is mistaken in his assertion that the prescribed time has elapsed. For that, and the additional following reasons, his Motion should be denied.

Factual Background

This Court issued a warrant for Dylan Jayne on May 13, 2020, on a criminal complaint charging Jayne with transmitting in interstate commerce a threat to injure another, in violation of 18 U.S.C. § 875(c). ECF Nos. 3, 4. It is alleged that on September 2, 2019, Jayne called the Abingdon state office of Senator M.W. and threatened to kill the Senator regarding a lack of Social Security payments, and also that Jayne has made other "concerning and threatening voicemails and phone calls to multiple Congressional offices dating back to 2008." *Id.* at 2.

Jayne, who has a history of mental illness, was arrested in the Eastern District of Virginia on June 25, 2020. *United States v. Jayne*, No. 2:20-mj-00247-DEM (E.D. Va.). Due at least in part to restrictions on live court appearances due to the COVID-19 pandemic, Jayne appeared via

videoconference for an initial appearance before the Honorable Douglas E. Miller, United States Magistrate Judge for the Eastern District of Virginia on June 26, 2020. *See id.*, ECF No. 4 (Min. Entry). The United States moved for his detention. *Id.* At the hearing, in light of Mr. Jayne's behavior and presentation to the Court, Judge Miller expressed concern about Jayne's competency to proceed, entered a temporary detention order, and requested the Assistant Federal Public Defender determine how best to proceed. *Id.*, ECF No. 6. He scheduled a preliminary hearing and detention hearing for July 1, 2020. *Id.*

On July 1, 2020, a hearing was convened before the Honorable Robert J. Krask, United States Magistrate Judge for the Eastern District of Virginia. *Id.*, ECF No. 9. Jayne continued to present in a manner that suggested he did not understand the proceedings and was unable to assist his counsel. For reasons that are not apparent from the record, it appears the EDVA court and/or the Federal Public Defender in the EDVA were unwilling to entertain a motion or order directing a competency evaluation. Due to concerns about proceeding with any substantive hearing given Jayne's apparent incompetency, the United States moved to continue the hearing. *Id.* The motion was granted, and the hearing was rescheduled for 2:30 p.m. on July 8, 2020. *Id.*

In an effort to attempt to resolve the apparent impasse in the EDVA, counsel for the United States contacted this Court on or about July 2, 2020, and requested Western District of Virginia (WDVA) counsel be appointed for Jayne prior to his removal to this district. *See* July 2, 2020 Dkt. Entry (appointing the Federal Public Defender before Jayne's appearance in the WDVA). The Federal Public Defender was appointed, but made no court filings or other apparent steps to facilitate a competency evaluation or the transfer of Jayne to the WDVA. When no other solution materialized, on July 8, 2020, the United States took the unusual step of moving in this Court for

an order directing a psychiatric examination to determine competency despite the fact that. Jayne had not appeared in WDVA and proceedings were still pending in the EDVA. ECF No. 8.

This Court scheduled a hearing on the motion for a competency evaluation, which was held on August 3, 2020, after he was ultimately transported to the WDVA. ECF No. 10. At the hearing, Jayne appeared to government counsel to not fully understand where he was or why he was in Court. *See* Tr., Aug. 3, 2020 Hrg., at 3; ECF No. 39; *see also id.* at 6-12 (statements and questions by Jayne). Defense counsel took no position on the government's motion for a psychiatric evaluation, but did request if one was to be granted that a local evaluation be performed due to the concerns of transferring him to a federal medical facility during the COVID-19 pandemic and the number of positive cases at the nearest Federal Medical Centers. *See* Min. Entry, ECF No. 10; Tr., Aug. 3, 2020 Hrg., at 2, 7; ECF No. 39. His counsel did acknowledge he appeared confused, but explained there were times when he does appear to understand. *Tr.*, Aug. 3, 2020 Hrg., at 7. The Court took the motion under advisement and gave counsel seven days to notify the Court as to an agreed-upon evaluator. *Id.*

The Order granting the motion for a psychiatric exam was entered on August 6, 2020. ECF No. 14. The psychiatric report was received on August 21, 2020**.** ECF No. 27.

A competency hearing was held on September 2, 2020. ECF Nos. 27, 34. Jayne was found incompetent, and, on the government's motion, this Court ordered him held for psychiatric treatment. ECF No. 37. The Court specifically ordered, pursuant to 18 U.S.C. § 4241(d)(1), that Jayne be "committed to the custody of the Attorney General to be hospitalized for treatment in a suitable mental health facility for a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future [he] will attain the capacity to permit his trial to proceed." *Id.* at 1. The Court further ordered that "the

Bureau of Prisons designate the facility to which the defendant will be transferred forthwith," and that the U.S. Marshals Service (USMS) "arrange a district-to-district transport of the defendant to the designated facility." *Id.* at 2.

The United States Marshal Service has advised they requested a designation with Bureau of Prisons the next day, on September 3, 2020. Jayne was designated to FMC Butner the following day, on September 4, 2020, but the USMS was advised there was no bed space available at that time. On September 29, 2020, the USMS was advised there was a two-month wait list at the facility. On November 13, 2020, they were further advised that a bed would be available for Jayne on December 21, 2020. On that date, which was the first date available for transfer, two local USMS deputies transported Jayne directly to FMC Butner.

On January 21, 2021, the warden at FMC Butner submitted a letter to the Court advising the Treatment Team members were conducting interviews and performing psychological testing (which had not previously done to the out-patient psychiatric evaluation). ECF No. 43. They expect to conclude the evaluation period by April 19, 2021.

## Legal Analysis

When a defendant is determined by a preponderance of the evidence to be suffering "from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," after a hearing, the Court "shall commit [him] to the custody of the Attorney General, who is directed to "hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the

proceedings to go forward."[1] 18 U.S.C. § 4241(d)(1). This initial period of hospitalization is "evaluative," meaning it is meant to determine if a defendant is likely to attain competency in the foreseeable future. *United States v. Magassouba*, 544 F.3d 387, 405 (2d Cir. 2008); *see also United States v. Barfield*, 969 F.2d 1554, 1557 (4th Cir. 1992) ("Section 4241(d) . . . only provides for diagnostic, not therapeutic, treatment for a defendant who is found to be incompetent."); *United States v. Strong*, 489 F.3d 1055, 1062 (5th Cir. 2007) ("the overarching purpose of commitment under § 4241(d) is to enable medical professionals to accurately determine whether a criminal defendant is restorable to mental competency").

    A.    <u>The four-month limitation applies to the period of hospitalization and excludes time taken to allocate a bed or transport a defendant to a facility.</u>

Although § 4241(d)(1) provides for a period of four months to complete the evaluation, those four months do not include the time between the entry of the Court's Order directing treatment and the arrival of the defendant at the hospital facility, or the time between the conclusion of the evaluation and receipt by the Court of the determination of the mental health treatment providers. The Fourth Circuit has held, albeit in an unpublished opinion, that the time necessary for the evaluators to complete and file their report is not included in the time limitation: "The four-month period is for *determination* of the defendant's condition and does not include the time need to file the evaluation with the court. . . . the statute intends that only the evaluation be completed with the four-month time period." *United States v. Flanery*, 870 F.2d 863, 1989 WL 79731, at *3-4 (4th Cir. 1989) (per curiam) (unpublished disposition) (emphasis in original); *see also Magassouba*, 544 F.3d at 406 ("[C]ircumstances can frequently arise that preclude a diligent district judge from making the required substantial probability finding within four months of a

---

[1] Further hospitalization is authorized "for an additional reasonable period of time" until he regains competency, if the Court determines there is a "substantial probability" that additional hospitalization will allow competency to be restored. 18 U.S.C. § 4241(d)(2).

5

defendant's § 4241(d) hospitalization."). Accordingly, provided the "facility makes an evaluation of a defendant within the required time, the defendant may be held past the four-month period." *Flanery*, 1989 WL 79371, at *3.

Although the Fourth Circuit does not appear to have addressed directly additional time spent in custody prior to the evaluation, it follows from the *Flanery* case that the four-month limitation applies only to the time for the evaluation itself, and thus the time period does not commence until the defendant arrives at the facility itself. Other courts have ruled exactly that— "[t]he four-month period of evaluative commitment begins on the date of hospitalization." *United States v. Villegas*, 589 Fed.Appx. 372, 373 (9th Cir. 2015) (unpublished); *see also* Or., *United States v. Jones*, No. xx, 2020 WL 7127321, at *2 (D.Mont. Dec. 4, 2020); *United States v. Wills*, No. 2:19-cr-000289, 2020 WL 53850, at *3 (S.D.W.V. Jan. 3, 2020); *United States v. Zapata-Herrera*, No. 14-cr-3639-GPC, 2015 WL 4878319, at *1 (S.D.Cal. Aug. 14, 2015); *United States v. Hatter*, No. 14-cr-1811-GPC, 2015 WL 1511015 (S.D.Cal. Mar. 19, 2015); United *States v. Giorella*, No. 09-cr-000-410PA, 2009 WL 4016631, at *2 (D.Colo. Nov. 17, 2009).

Jayne arrived at the Federal Medical Center on December 21, 2020—less than two months ago. The four-month time period allowed for his hospitalization did not commence until that date, and he is not currently being held in violation of 18 U.S.C. § 4241(d).

    B.    <u>The interests of justice require the completion of the psychiatric evaluation.</u>

Even if this Court were to consider the delay in transporting Jayne to be an issue, it does not justify Jayne's release from custody.

The interests of the defendant, society, and justice dictate that Jayne's hospitalization under § 4241(d) be allowed to continue uninterrupted for the full four months, or whatever portion of that time the providers deem necessary. *See Magassouba*, 544 F.3d at 408 ("No one's interests—

not the parties', not the court's, and not the public's—are well served by encouraging undue haste in § 4241(d)(1) evaluations."); *Giorella*, 2009 WL 4013361 at *3. The delay in committing Jayne to the Federal Medical Center was not due to any party's negligence or carelessness. The Court's Order was complied with, as the Bureau of Prisons designated Jayne to a facility within two days of the Order (one day after receiving the request from the USMS). And, the USMS made a district-to-district transfer of Jayne when the bed became available. The delay in transporting Jayne was caused by a lack of available bed space—a problem for which there is no obvious or available remedy despite the best efforts of the government. There is simply in limitation in bed space at Federal Medical Centers and numerous defendants and inmates in need of those beds. The length of the delay was unfortunate, but as at least one other Court has noted "delays between the court order and the admission to a facility for evaluation are to be expected due to administrative and resource constraints." *Wills*, 2020 WL 53850, at *4.

The government has a "substantial interest in timely prosecution" and "a concomitant interest in assuring a defendant a fair trial." *Sell v. United States*, 539 U.S. 166, 167 (2003). "It follows that 'the government has a compelling interest in pursuing' a correct diagnosis." *United States v. McKown*, 930 F.3d 721, 728 (5th Cir. 2019) (quoting *United States v. Filippi*, 211 F.3d 649, 652 (1st Cir. 2000)). The brief out-patient examination used to assess Jayne's competency is insufficient for this task. "[A] more 'careful and accurate diagnosis' than the 'brief interviews' and 'review of medical records' that tend to characterize the initial competency proceeding" is required. *Strong*, 489 F.3d at 1062. Even where a defendant was held for hospitalization for more than four months, the error "did not undermine the district court's authority" to allow the treatment and hospitalization under § 4241(d) to continue. *Magassouba*, 544 F.3d at 410 (finding the error

7

did not prevent an order of continued hospitalization under § 4241(d)(2). Although delays are not acceptable and should not occur, they are at times inevitable.

The delay in this case while awaiting bed space was not so unreasonable to justify the release of Jayne, which would, in all likelihood, effectively permanently suspend the proceedings against him. As the District of Montana has noted, even if a due process violation did result from delays in waiting for hospitalization, "the appropriate remedy is an injunction," not an end to the defendant's criminal case. *Jones*, 2020 WL 712321, at *3. Here, of course, the hospitalization has commenced an injunction is unnecessary.

Conclusion

For these reasons, Jayne's motion for release from custody should be denied.

Respectfully submitted,

DANIEL P. BUBAR
Acting United States Attorney

/s/ Jennifer R. Bockhorst
Attorney for United States of America
Tennessee Bar No. 021395
U.S. Attorney's Office
180 West Main Street
Abingdon, Virginia 24210
276-628-4161
276-628-7399 (fax)

CERTIFICATE OF SERVICE

I certify on Friday, February 12, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the defendant.

/s/ Jennifer R. Bockhorst